UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:16-cv-00366-RJC

| | |
|---|---|
| DENISE W. DARBY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) **ORDER** |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner of | ) |
| Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

**THIS MATTER** comes before the Court on Plaintiff's Motion for Summary Judgment, (Doc. No. 9), and Memorandum in Support, (Doc. No. 10), and Defendant's Motion for Summary Judgment, (Doc. No. 11), and Memorandum in Support, (Doc. No. 12).

**I. BACKGROUND**

A. Procedural Background

Plaintiff Denise W. Darby ("Plaintiff") seeks judicial review of Defendant Social Security Commissioner's ("Defendant" or "Commissioner") denial of her social security claim. (Doc. No. 1). On December 19, 2007, Plaintiff filed her first application for a period of disability and disability insurance benefits ("DIB") and supplemental security income ("SSI") under Title II and Title XVI of the Social Security Act, 42 U.S.C. § 405 et seq. (Doc. Nos. 8 to 8-14: Administrative Record ("Tr.") at 525). In 2008, ALJ denied those claims and the Appeals Council thereafter denied Plaintiff's request for review. (Id.). Because Plaintiff did not seek review before this Court, the 2008 ALJ decision remains final. (Id.).

On September 27, 2010, Plaintiff filed the application for DIB and SSI that is at issue before the Court. (Id. at 158). In this second application, Plaintiff alleged an inability to work due to disabling conditions beginning on July 31, 2010. (Id.). The Commissioner denied Plaintiff's application initially on February 4, 2011, and again after reconsideration on May 9, 2011. (Id. at 158, 169). Plaintiff then filed a timely written request for a hearing, which was held on December 10, 2012. (Id. at 33–77). The ALJ issued a decision on January 14, 2013, denying Plaintiff's claims. (Id. at 16–32). Plaintiff filed a request for review of the ALJ's decision on March 13, 2013, which the Appeals Council denied on June 16, 2014. (Id. at 1–5, 12). Plaintiff then appealed the Appeals Council's decision but on February 25, 2015, this Court granted a consent motion to remand Plaintiff's case to the Commissioner for a new hearing. (Id. at 597–601).

On remand, the ALJ once again denied Plaintiff's claim in a written decision on March 28, 2016. (Id. at 522). Plaintiff then filed written exceptions to the ALJ's decision but, on review, the Appeals Council denied Plaintiff's claim on September 6, 2016, rendering the ALJ's decision the final determination of Defendant. (Id. at 512, 520). After this second denial by the Appeals Council, Plaintiff filed this action requesting judicial review of Defendant's decision.

B. Factual Background

The question before the ALJ was whether Plaintiff was under a "disability" as that term of art is defined for Social Security purposes, at any time between July 31, 2010, and the date of his decision on March 28, 2016.[1] (Tr. at 526). To establish entitlement to benefits, Plaintiff has the burden of proving that she was disabled within the meaning of the Social Security Act. Bowen v.

---

[1] Under the Social Security Act, 42 U.S.C. § 301, et seq., the term "disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (quoting 42 U.S.C. § 423(d)(1)(A)).

Yuckert, 482 U.S. 137, 146 n.5 (1987). The ALJ concluded that Plaintiff was not under a disability at any time from time between July 31, 2010 and March 28, 2016. (Tr. at 525–51).

The Social Security Administration has established a five-step sequential evaluation process for determining if a person is disabled. 20 C.F.R. § 404.1520(a). The five steps are:

> (1) whether claimant is engaged in substantial gainful activity—if yes, not disabled;
> (2) whether claimant has a severe medically determinable physical or mental impairment, or combination of impairments that meet the duration requirement in § 404.1509—if no, not disabled;
> (3) whether claimant has an impairment or combination of impairments that meets or medically equals one of the listings in appendix 1 and meets the duration requirement—if yes, disabled;
> (4) whether claimant has the residual functional capacity ("RFC") to perform his or her past relevant work—if yes, not disabled; and
> (5) whether considering claimant's RFC, age, education, and work experience he or she can make an adjustment to other work—if yes, not disabled.

See 20 C.F.R. § 404.1520(a)(4)(i–v). In this case, the ALJ determined at the fifth step that Plaintiff was not disabled. (Tr. at 549–50).

Specifically, the ALJ first concluded that Plaintiff had not engaged in any substantial gainful activity since July 31, 2010, her alleged disability onset date. (Id. at 528). At the second step, the ALJ found that Plaintiff had the following severe impairments: "cervical spondylosis with secondary cervical radiculopathy and cervical dystonia, history of a left rotator cuff tear, status post repair, myofascial pain syndrome, hypertension, obesity, as well as depressive and schizoaffective disorders." (Id.). At the third step, the ALJ determined that Plaintiff did not have an "impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. 404, Subpart P, Appendix 1." (Id. at 528–32). In making this determination, the ALJ found that Plaintiff had mild restriction in activities of daily living;

moderate difficulties in concentration, persistence, or pace; moderate difficulties in social functioning; and no repeated episodes of decompensation. (Id. at 529).

Next, the ALJ assessed Plaintiff's RFC and found that she retained the capacity to perform:

> "light" work as defined in 20 CFR 404.1567(b) and 416.967(b) except she is limited to the occasional climbing of ladders, occasional crawling, frequent but not constant reaching overhead handling and fingering with the left upper extremity. Further, [Plaintiff] is to avoid concentrated exposure to hazards. Finally, [Plaintiff] is limited to simple routine repetitive tasks in a stable work environment at a nonproduction pace with occasional interpersonal interaction.

(Id. at 532). In making his finding, the ALJ specifically stated that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." (Id.). The ALJ further opined that he "considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs [Social Security Rulings] 96-2p, 96-5p, 96-6p and 06-3p." (Id.).

At the fourth step, the ALJ found that Plaintiff could not perform her past relevant work. (Id. at 549). Finally, at the fifth and final step, the ALJ concluded that, after "considering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." (Id. at 549). Therefore, the ALJ determined that Plaintiff was not under a "disability," as defined by the Social Security Act, from July 31, 2010 through the date of his decision, March 28, 2016.

On review, the Appeals Council determined that the ALJ's decision "fully complies with the order of the U.S. District Court, substantial evidence supports the decision and it is consistent with the Social Security Administration regulations." (Id. at 512). Plaintiff raised several objections at this stage which the Council addressed in turn. First, the Appeals Council commented on Plaintiff's concern that the ALJ put great weight on Dr. Cummins' opinion while ignoring his

comments on Plaintiff's limitations of attendance and punctuality. (Id.). The Council stated that Dr. Cummins' report was, in fact, consistent with the ALJ's RFC analysis. While the doctor stated that Plaintiff was "seriously limited but not precluded," he did not determine that Plaintiff was "unable to meet competitive standards" or that Plaintiff had "no useful ability to function"—which were two more restrictive options Dr. Cummins could have selected. (Id.). Furthermore, though Plaintiff pointed to Dr. Cummins' report to support the argument that she could not complete a normal workday or work week, the Council noted that the relevant portion of Dr. Cummins' form was not complete in regard to that specific ability. (Id.).

Next, the Appeals Council assessed new medical evidence that Plaintiff submitted. This evidence was a checklist form completed by Jane Denno, N.P., completed April 4, 2016 after the ALJ's decision was rendered. (Id. at 513). The Appeals Council determined that this new evidence did not affect the ALJ's determination because: (1) it post-dated the decision and did not reference when Plaintiff's purported limitations were first determined; (2) a checklist form completed by a nurse practitioner was a non-acceptable medical source; and (3) Ms. Denno's rationale did not support the severity of the limitations the form claimed Plaintiff had. (Id.). As such, the Council saw no reason to disagree with the ALJ's final determination.

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The District Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795

F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In Smith v. Heckler, the Fourth Circuit noted that "substantial evidence" has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401); see also Seacrist v. Weinberger, 538 F.2d 1054, 1056–57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence . . . .").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. Hays, 907 F.2d at 1456; see also Smith v. Schweiker, 795 F.2d at 345; Blalock, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome—so long as there is "substantial evidence" in the record to support the final decision below. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## III. DISCUSSION

On appeal to this Court, Plaintiff argues that the ALJ erred as a matter of law in denying her claims because: (1) the new evidence submitted to the Appeals Council directly contradicted the ALJ's decision; (2) the ALJ failed to give a full function-by-function analysis of the nonexertional mental functions associated with Plaintiff's mental impairments in his RFC analysis; (3) the ALJ failed to explain why the limitations contained in medical opinions he otherwise gave great weight to were not included in the RFC finding. (Doc. No. 10). In response, Defendant

argues that: (1) the Appeals Council sufficiently addressed nurse practitioner Jane Denno's medical evidence; (2) the ALJ provided the appropriate explanation of his residual functional capacity finding, including a discussions of and citations to substantial evidence in the record; and (3) the ALJ properly analyzed the relevant opinion evidence he relied upon. (Doc. No 12). The Court will assess each of these arguments in turn.

A. <u>Plaintiff's New Evidence</u>

Plaintiff first claims that new evidence submitted to the Appeals Council directly contradicted the ALJ's decision. (Doc. No. 10 at 6). This new evidence is a checklist form completed by nurse practitioner Jane Denno, who treated Plaintiff since at least October 30, 2012. (<u>Id.</u>); (Tr. at 495, 1001). This form was completed on February 23, 2016, after the ALJ's March 28, 2016 decision. (Tr. at 525–51, 1001). Although this form postdates the ALJ's scope of inquiry, Plaintiff points to Ms. Denno's determination that "'[f]or the period on or before March 31, 2013' Darby would be off task and not attending to her job duties 16%–20% of an 8-hour workday." (Doc. No. 10 at 6) (citing (Tr. 1001)). The nurse handwrote next to her checklist that Plaintiff is "easily distracted, has poor concentration and limited focus!" (Tr. 1001).

Plaintiff claims that this opinion contradicts the ALJ's RFC determination. Plaintiff claims that the ALJ failed to account for how much time Plaintiff would be off task due to her moderate limitations in concentration, persistence, or pace. (Doc. No. 10 at 6–7). The vocational witness testified that "[i]t would eliminate all employment" if a person would be off-task more than 10% of the working day due to a combination of chronic pain and mental impairments. (Tr. at 595–96). Therefore, Plaintiff claims that her new evidence fills an evidentiary gap from a treating provider, thus warranting a remand by this Court. (Doc. No. 10 at 7–8).

To support her conclusion, Plaintiff points to the case Meyer v. Astrue for the proposition that "[w]here new evidence competes with the evidence underlying an ALJ's decision, a situation arises in which 'no fact finder has made any finding as to the [new evidence] or attempted to reconcile that evidence with the conflicting and supporting evidence in the record.'" (Id.) (quoting Meyer v. Astrue, 662 F.3d 700, 707 (4th Cir. 2011)).

Defendant responds, arguing that the Appeals Council properly assessed Plaintiff's new evidence and, as a result, disregarded Ms. Denno's opinion. (Doc. No 12 at 5–6). Defendant states that Meyer is not applicable in this case because there the Appeals Court did not include an explanatory discussion of the new evidence, which then rendered the situation unclear as to how the new evidence could be reconciled with the ALJ's decision. (Id. at 5–6). Here, Defendant emphasizes, the Appeals Council gave a thorough discussion as to why Plaintiff's new evidence does not impact the ALJ's ultimate determination. (Id. at 6) (citing Tr. at 513–14).

The Court agrees with Defendant. In Meyer, "[t]he Appeals Council made the new evidence part of the record but summarily denied review of the ALJ decision." Meyer, 662 F.3d at 707. "Thus, no fact finder has made any findings as to the treating physician's opinion or attempted to reconcile that evidence with the conflicting and supporting evidence in the record." Id. Here, the Appeals council did give a thorough discussion enumerating the insufficiencies of Ms. Denno's opinion. (Tr. 513–14). What's more, the Appeals Council's determination is consistent with the applicable law. Nurse practitioners are deemed "other sources," not necessarily "acceptable medical sources." SSR 06-03P (S.S.A. Aug. 9, 2006) (stating "other sources" include "[m]edical sources who are not 'acceptable medical sources,' such as nurse practitioners…."). Additionally, this new evidence from an "other source" took the form of a checkbox form, postdated the ALJ's decision, and failed to mention its relevance to the time period of the ALJ's

decision. See Anderson v. Astrue, 696 F.3d 790, 794 (8th Cir. 2012) (commenting on the conclusive, unpersuasive character of checkbox forms); Outlaw v. Colvin, No. 5:11-CV-647-FL, 2013 WL 1309372, at *3 (E.D.N.C. Mar. 28, 2013) (finding that evidence "need not have existed during that period, but rather must be considered if it has any bearing upon whether the claimant was disabled during the relevant period of time.") (citing Wooldridge v. Bowen, 816 F.2d 157, 160 (4th Cir. 1987)). The Court therefore is not in a position where it "simply cannot determine whether substantial evidence supports the ALJ's denial of benefits." Meyer, 662 F.3d at 707. In fact, quite the opposite is true here: the ALJ's decision, in combination with the Appeals Council's explanation, provided clear substantial evidence as to how Plaintiff's disability determination was made.

B. The ALJ's RFC Analysis

Defendant next argument claims that the ALJ's RFC analysis does not include the complete determination of Plaintiff's mental limitations as demanded by SSR 96-8p. (Doc. No. 10 at 9). Plaintiff claims that "only a determination of [Plaintiff's] ability to stay on task for a full workday and workweek will account for her difficulties with concentration, persistence or pace," which the ALJ did not mention. (Id. at 10). To support this assertion, Plaintiff relies heavily on Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015), for the proposition that a moderate limitation of concentration, persistence or pace—as the ALJ found with Plaintiff in this case—is not properly assessed by limiting restrictions to simple, routine tasks or unskilled work. (Id. at 11). Rather, limiting work to routine tasks and unskilled work simply addresses the complexity of work, which differs from one's ability to stay on task. (Id.) Plaintiff also argues that the ALJ did not provide the required detailed assessment of the effect of both Plaintiff's difficulties in social functioning and activities of daily living on her ability to engage in sustained work activities. (Id. at 12–14).

Defendant claims that Plaintiff's interpretation of Mascio is too broad. (Doc. No. 12 at 9). There, the Court found a lack of explanation as to the effect of the claimant's moderate limitation of concentration, persistence, or pace. (Id.). Here, on the other hand, Defendant points out that the ALJ took Plaintiff's moderate limitation into account by limiting her work to "a stable work environment at a nonproduction pace with occasional interpersonal interaction." (Id.) (quoting (Tr. at 532.)). Defendant also contends that the ALJ's RFC analysis adequately addresses Plaintiff's other limitations in daily living activities and social functioning. (Id. at 11–14).

1. The effect of Plaintiff's moderate limitations in concentration, persistence, and pace on her ability to engage in sustained work activities.

In regards to the ALJ's assessment of Plaintiff's moderate limitation in concentration, persistence, or pace, the Court agrees with Defendant. The ALJ sufficiently described his reasoning for concluding Plaintiff's RFC. The decision does mention Dr. Britt's conclusion that Plaintiff's concentration, persistence, or pace was "compromised and poor." (Tr. at 542). However, the ALJ described why Dr. Britt's opinion was given less weight: he is not a medical examiner and his observations contradicted his conclusions. (Id. at 542, 546–47). The decision also gives great weight to Dr. Cummins, whose report found that Plaintiff's concentration was decreased but her attention span was adequate. (Id. at 543). He later determined Plaintiff's concentration was "fair" and that her attention span was "OK." (Id. at 544). He also determined that Plaintiff's ability to remember work-like procedures was limited but satisfactory and that her ability to understand and remember short and simple instructions, as well as carry them out, was unlimited or very good. (Id.). Finally, the ALJ culminated all the difficulties found in terms of Plaintiff's concentration, persistence, and pace and determined that her mental impairments were capable of limiting Plaintiff, but evidence did not confirm that they were so severe as to be viewed as disabling limitations. (Id. at 548–49).

Given the above medical evidence, Plaintiff's RFC limited her work environment to "simple, routine, repetitive tasks in a stable work environment at a nonproduction pace with occasional interpersonal interaction." (Id. at 532). Plaintiff may focus on the "simple, routine, repetitive tasks" portion of her RFC to declare a violation of Mascio. While such a limit does not address a limitation in concentration, persistence or pace, the combination of a stable work environment and a nonproduction pace can.

It is true that this court has, along with many of the other district courts in North Carolina, found that the limitation of nonproduction pace alone does not sufficiently account for a moderate limitation in concentration, persistence, or pace in light of Mascio. Kittrell v. Colvin, No. 5:14-cv-163-RJC, 2016 U.S. Dist. LEXIS 33929, at *11 (W.D.N.C. Mar. 16, 2016) (unpublished).[2] It is also true that other courts have found that such a limitation does adequately address impairments in concentration, persistence or pace when either supported by the medical record or when added to other limitations, such as a stable work environment.[3]

---

[2]  Citing Biddell v. Colvin, No. 1:15-cv-80-MOC, 2016 U.S. Dist. LEXIS 24404, 2016 WL 815300, at *5 (W.D.N.C. Feb. 29, 2016) (unpublished); Weeks v. Colvin, No. 5:14-cv-155-D, 2015 U.S. Dist. LEXIS 119238, 2015 WL 5242927, at *2 (E.D.N.C. Sept. 8, 2015) (unpublished); Jones v. Colvin, No. 4:14-cv-200-RN, 2015 U.S. Dist. LEXIS 106622, 2015 WL 4773542, at *4 (E.D.N.C. Aug. 13, 2015) (unpublished); Hagedorn v. Colvin, No. 2:12-cv-85-RLV, 2015 U.S. Dist. LEXIS 94071, 2015 WL 4410288, at *4 (W.D.N.C. July 20, 2015) (unpublished); Salmon v. Colvin, No. 1:12-cv-1209-LCB, 2015 U.S. Dist. LEXIS 43334, 2015 WL 1526020, at *3 (M.D.N.C. Apr. 2, 2015) (unpublished). Id. at *11–13 n.3.

[3]  See, e.g., Gordon v. Berryhill, No. 3:16-cv-130, 2017 WL 5759940, 2017 U.S. Dist. LEXIS 195089, at *6–7 (W.D.N.C. Nov. 28, 2017) (unpublished); Jarek v. Colvin, 3:14-CV-620-FDW-DSC, 2015 WL 10097516, at *5 (W.D.N.C. Sept. 4, 2015) (unpublished) *adopted by* 2016 WL 626566 (W.D.N.C. Feb. 16, 2016) *aff'd by* 2017 WL 129024 (4th Cir. Jan. 13, 2017) (finding that the limit of "repetitive tasks *not at an assembly line pace*" did account for limitations in concentration, persistence or pace); White v. Colvin, No. 1:14-CV-161-RLV, 2016 WL 1600313 (W.D.N.C. Apr. 21, 2016) (unpublished); Horning v. Colvin, No. 3:14-CV-722-RJC, 2016 WL 1123103 (W.D.N.C. Mar. 21, 2016) (unpublished); Linares v. Colvin, No. 5:14-cv-120-GCM, 2015 U.S. Dist. LEXIS 93291, 2015 WL 4389533, at *4 (W.D.N.C. July 17, 2015) (unpublished); but see Hagedorn v. Colvin, No. 2:12CV85-RLV, 2015 WL 4410288, 2015 U.S. Dist. LEXIS

At first glance, one might find discrepancies between the cases dealing with nonproduction pace limitations. However, to focus merely on what limitation is included in the final RFC is nothing short of folly. Rather, parties should focus on what precedes the final RFC. The ALJ must reflect her final RFC determination through a narrative discussion. SSR 96-8p, 1996 SSR LEXIS 5, *19. That narrative discussion must support limitations within the RFC by citing the record. Id. (requiring a narrative discussion describing how conclusions are supported by evidence—both medical and nonmedical—in the record). Furthermore, the RFC must include limitations that address not only a claimant's pace, but her concentration and persistence as well. See Linares v. Colvin, No. 5:14-cv-120-GCM, 2015 U.S. Dist. LEXIS 93291, 2015 WL 4389533, at *4 (W.D.N.C. July 17, 2015) (stating that a non-production limit address limitations to pace while a stable environment addresses limitations to concentration and persistence). And finally, the ALJ must show how a claimant can stay on task throughout a full work day. Kittrell, 2016 U.S. Dist. LEXIS 33929, at *11.

The end product is this: if the ALJ shows her work, then the Court will most likely find substantial evidence supporting her ultimate conclusion. There is not a hard and fast rule as to what RFC limitations sufficiently addresses a plaintiff's moderate limitation in concentration, persistence or pace. In fact, a limit to simple, routine tasks or unskilled work in the face of moderate limitation in concentration, persistence or pace may suffice, even under Mascio. This is because an exception to Mascio arises where "medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence,

---

94071, at *10 (W.D.N.C. July 20, 2015) (unpublished) (finding that limiting a claimant to "simple, routine, and repetitive tasks in a low-production work setting with no extensive interaction with co-workers and no public contact, and that the work environment should be low-stress, defined as occasional change in job setting or decision making" accounted for some of the mental limitations found in SSR 96-8p, but nonetheless failed to address a limit in concentration).

and pace." Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011) (cited and relied upon by Mascio, 780 F.3d at 638). In those cases, "courts have concluded that limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations." Id. It is when the ALJ fails to specify that medical evidence suggests a claimants ability to work is unaffected by her limitation that an RFC of simple, routine tasks or unskilled work does not suffice. Id. at 1181. So, as long as the ALJ can connect her conclusion to the record by way of narrative reasoning, the RFC can take many forms in the face of moderate limitations in concentration, persistence, and pace.

Turning to Plaintiff's RFC, as mentioned above, the ALJ sufficiently relies on sources which address any limitations to concentration, persistence or pace. Specifically, the ALJ cited Dr. Cummins finding that: (1) Plaintiff's concentration was decreased but her attention span was adequate; (2) Plaintiff has limited but satisfactory abilities to remember work-like procedures; (3) Plaintiff's ability to understand and remember very short and simple instructions, as well as carry them out was unlimited or very good; and (4) Plaintiff's ability to sustain an ordinary routine without special supervision, maintain attention for two-hour segments, and work in coordination with others was limited but satisfactory. (Tr. at 543–44). This citation to the medical record in combination with the limits of both a stable work environment and a nonproduction pace with occasional interpersonal interaction sufficiently address Plaintiff's mental RFC.

2. The effect of Plaintiff's moderate limitations in social functioning on her ability to engage in sustained work activities.

As for Plaintiff's difficulties in social functioning, the Court again agrees with Defendant. The ALJ limited Plaintiff's RFC to "occasional interpersonal interactions." (Tr. at 532). Defendant points out that this limitation is adequate and based on substantial evidence within the medical record recited by the ALJ. (Doc. No. 12 at 11–12). Plaintiff, however, claims that the

ALJ did not discuss Plaintiff's social limitations and claims that the ALJ erred in failing to explain what this limitation means. (Doc. No. 10 at 13).

The Court again agrees with Defendant that the ALJ cited several reports within Plaintiff's medical record that indicate Plaintiff's limitations in social functioning were indeed limited, but not disabling. (Tr. at 542–43). Of particular importance, Dr. Cummins stated that Plaintiff's social functioning—that is Plaintiff's ability to coordinate and work in proximity with others—was limited but satisfactory. (Id. at 544). This opinion was given significant weight by the ALJ. (Id. at 547). On the other hand, the opinions of Dr. Britt, Dr. Williams, and Dr. Scarborough, which all reflected more debilitating limitations in social functioning, were assigned little weight by the ALJ. (Id. at 546–47). As for the meaning of "occasional interpersonal interactions," the Court maintains that the phrase means exactly what it says: occasional—as opposed to regular— interpersonal interactions. This limits Plaintiff's work related setting in terms of how much interaction she can maintain with others. Therefore, the Court finds that the ALJ did properly address Plaintiff's social functioning limitations and did so upon the reliance of substantial evidence.

3. The effect of Plaintiff's difficulties in daily living activities on her ability to engage in sustained work activities.

Finally, Plaintiff takes issue with ALJ's failure to discuss the effect of Plaintiff's mild restriction in activities of daily living on her RFC analysis. Plaintiff again points to Mascio and SSR 96-8p. (Doc. No. 10 at 14–15). However, the ALJ found that Plaintiff had *mild* difficulties in daily living activities where Mascio pertained to *moderate* limitations in concentration, persistence, and pace. (Tr. 19–20). This Court does not interpret Mascio's holding as applying to

all restrictions.[4] See Brooks v. Berryhill, No. 3:15-CV-00440-RJC, 2017 WL 1196449, at *4 (W.D.N.C. Mar. 29, 2017) (holding that "Mascio dealt with 'moderate' restrictions and did not hold that all restrictions, including mild restrictions, be explicitly discussed in terms of RFC."); see also Gilbert v. Berryhill, No. 5:16-CV-00100-MOC, 2017 WL 1196452, at *3 (W.D.N.C. Mar. 29, 2017) (finding that Mascio did not apply to cases of mild difficulties); Roberson v. Colvin, No. 3:14–cv–00488–MOC, 2016 WL 5844148, at *6 (W.D.N.C. Oct. 4, 2016) (unpublished) (finding that, because the case "concerns only 'mild difficulties,' it [did not] trigger the RFC discussion requirements of Mascio per se."). As such, this Court does not find Plaintiff's argument persuasive regarding the ALJ's discussion—or lack thereof—of the mild limitations on daily living activities.

C. The ALJ's Treatment of Medical Opinions

Finally, Plaintiff argues that the ALJ failed to explain why limitations contained in medical opinions he ultimately gave great weight to were not included in the RFC finding. (Doc. No. 10 at 15). Specifically, Plaintiff claims that the ALJ gave considerable weight to the opinion of Dr. Cummins but failed to explain why he did not adopt all of the doctor's limitations. (Id. at 15–16). For instance, Plaintiff claims that Dr. Cummins limited Plaintiff's ability to: (1) maintain regular attendance and be punctual; and (2) complete a normal workday and work week without interruptions. (Id. at 16–17) (citing (Tr. at 507)). Defendant responds, arguing that there is no support for the proposition that an ALJ must adopt every limitation within the opinions to which they give great weight. (Doc. No. 12 at 15). Furthermore, Defendant argues that the ALJ does in fact describe his consideration of Dr. Cummins' limitation of Plaintiff's ability to maintain

---

[4] This Court recognizes the differing views regarding this issue. See, e.g., Reinhardt v. Colvin, No. 3:14-CV-00488-MOC, 2015 WL 1756480, at *3 (W.D.N.C. Apr. 17, 2015) (finding that the ALJ failed to provide a detailed assessment of the plaintiff's mild mental limitations in the body of the RFC discussion).

attendance. (Id. at 16). Also, Defendant says that Dr. Cummins never assigned limitations for Plaintiff's ability to complete a workday or workweek in the first place. (Id.).

Upon review, the Court yet again agrees with Defendant. To begin with, an ALJ is not required to adopt an opinion wholesale after affording it great weight.[5] Additionally, the ALJ cites Dr. Cummins' conclusion that Plaintiff's ability to sustain an ordinary routine without supervision was "limited but satisfactory." (Tr. at 544). Furthermore, Plaintiff's ability to "maintain regular attendance and be punctual within customary, usually strict tolerances was seriously limited *but not precluded*." (Id.) (emphasis added). As Defendant mentions, Dr. Cummins' conclusions are not incompatible with the ALJ's RFC determination. (Doc. No. 12 at 16).

Finally, after reviewing Dr. Cummins' report within the medical record, the Court agrees with Defendant that the doctor explicitly declined to offer an opinion as to Plaintiff's ability to complete a workday and workweek without interruption from psychological symptoms. (Doc. No. 12 at 16) (citing Tr. at 507)). The ALJ could not err in failing to mention limitations that were never found to begin with. Therefore, given Defendant's arguments, and the medical record cited by the ALJ, the Court finds that the ALJ's RFC analysis sufficiently described Dr. Cummins' medical reports after attributing them great weight.

---

[5] Geary v. Colvin, No. 1:15CV00579, 2016 WL 3039835, at *11 (M.D.N.C. May 27, 2016) (citing Bennett v. Colvin, No. 3:13-CV-01176, 2015 WL 153950, at *13 (M.D. Tenn. Jan. 12, 2015) (unpublished); Razey v. Colvin, No. 14-23, 2014 WL 4792150, at *2 (W.D. Pa. Sept. 23, 2014) (unpublished); Lambert–Newsome v. Astrue, 2012 WL 2922717 at * 6 (S.D. Ill. July 17, 2012) (unpublished); Irvin v. Astrue, 2012 WL 870845 at * 2–3 (C.D. Cal. March 14, 2012) (unpublished)).

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1. Plaintiff's Motion for Summary Judgment, (Doc. No. 9), is **DENIED**;

2. Defendant's Motion for Summary Judgment, (Doc. No. 11), is **GRANTED**; and

3. The Clerk of Court is directed to close this case.

Signed: January 5, 2018

Robert J. Conrad, Jr.
United States District Judge

SEALED DOCUMENT with access to All Parties/Defendants.